Argued June 10, modified and remanded with directions
December 18, 1968, petition for rehearing denied
February 11, 1969

# WILSON, *Appellant, v.* PORTLAND GENERAL ELECTRIC COMPANY, *Respondent.*

### 448 P. 2d 562

386

*Bernard Jolles,* Portland, argued the cause for appellant. With him on the briefs were Franklin, Olsen, Bennett, Des Brisay & Jolles, Portland.

*David P. Templeton,* Portland, argued the cause for respondent. With him on the brief were John C. Beatty, Jr., Frederick T. Smith, and Dusenbery, Martin, Beatty & Templeton, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

## HOLMAN, J.

This is an action for damages for personal injuries. At the completion of plaintiff's case defendant moved for a judgment of involuntary nonsuit. The trial court held that it should be granted but continued the trial after advising both parties that it would sign and enter a judgment of involuntary nonsuit after a jury verdict without regard to the evidence subsequently produced in the case. Thereafter, defendant produced its evidence and after both parties rested defendant renewed its motion for a judgment of involuntary nonsuit and also made a motion for a directed verdict. The court held the defendant was entitled to a directed verdict, but on plaintiff's motion submitted the cause to the jury. The jury returned a verdict in favor of plaintiff in the sum of $82,256. Defendant submitted a written motion for a judgment of involuntary nonsuit and also for a judgment notwithstanding the verdict or in the alternative for a new trial. The trial judge refused to enter the jury's verdict and the judgment notwithstanding the verdict and granted the judgment of involuntary nonsuit. Plaintiff appealed.

■■ The above procedure can be productive of nothing but a waste of judicial time and litigant's money. There is no such procedure as granting a nonsuit and continuing the case. If the court requires that the case continue, as it did, it is the equivalent of a denial of the nonsuit regardless of what the court may have said at the time. At the completion of all testimony on both sides, if the court was of the opin-

ion that the evidence failed to make out a case for plaintiff, the court had the option of granting a directed verdict or submitting the matter to the jury under ORS 18.140 and then proceeding in conformance with that statute. This litigation should and will be terminated with the disposition of this appeal.

Defendant entered into a contract with the Tyee Construction Company for the construction by Tyee of an electrical transmission line. Tyee, in turn, subcontracted the construction of the towers supporting the line to the John M. King Company (King). Plaintiff was an employee of King and was injured while a member of a crew which was constructing a tower.

The method of construction was to erect the tower from the ground until it reached a point slightly below the lower arm of the tower. A section (called a dog-leg), which included the lower arm and the body of the tower immediately above and below the arm, was assembled on the ground and raised by a crane and secured in place on the top of the bottom section. The top section, comprising the balance of the tower, was then hoisted and affixed. The arm on the dog-leg section had a support which ran from the end of the arm up to the bottom of the third or top section of the tower. This support, in relation to the body and lower arm of the tower, was similar to the hypotenuse of a right-angle triangle.

The plaintiff was injured when he walked out on the lower arm to affix a sling on a crane boom to the arm's outer end. The purpose was to allow the crane to raise the arm slightly to bring the bolt holes in the support into alignment with the corresponding holes in the body of the upper part of the tower so the support could be bolted to it. As plaintiff walked out on

the arm it gave way and its outer end dropped causing him to fall to the ground.

The liability of the defendant was claimed on two theories: violation of the Employer's Liability Act (ELA), and common law negligence. The principal controversy is whether the facts make a jury question of liability by defendant under the ELA. The trial court thought they did not. Plaintiff contends that defendant retained sufficient control over the manner and method of the work to bring it within the contemplation of the Act and thus impose upon it the duty of using every device, care and precaution practicable to furnish plaintiff a safe place to work.

The applicable provision of the ELA is encompassed in ORS 654.305, which provides as follows:

"Generally all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

■ In order for an owner to be subject to the duties imposed by the statute he must be one "having charge of, or responsible for" the work. These requirements of the statute have been interpreted in terms of defendant's control over the work. *Thomas v. Foglio,* 225 Or 540, 546, 385 P2d 1066 (1961).

■ The existing cases decided under the ELA fall into two general categories. The usual action is one by an employee against his direct employer who

has elected not to contribute under the provisions of the Workmen's Compensation Act. This is not such a case. However, it is not necessary that a defendant in an ELA action be the direct employer of the plaintiff. *Thomas v. Foglio, supra* at 544; *Myers v. Staub,* 201 Or 663, 272 P2d 203 (1954). There are three kinds of cases that fall into this second category where the person charged with the duties imposed under the Act is not the employee's direct employer. The first and usual situation which falls within this latter category is where defendant and plaintiff's employers are simultaneously engaged in carrying out work on a common enterprise. When, as the result of the activities of defendant's employees or use of his equipment, a risk of danger is created which contributes to an injury to plaintiff who is the employee of another engaged in work on the same project, defendant has been considered to have sufficient control over the work to be subject to the duties imposed by the Act. This is so even though he might not have had actual control over the specific activity in which plaintiff was engaged at the time of his injury. *Thomas v. Foglio, supra* at 549. The present case is not of this kind. Though defendant had employees on the project who were engaged with plaintiff in the furtherance of a common enterprise, and defendant could thus be said to have had a measure of control over the enterprise, this control created no risk of danger which resulted in plaintiff's injury. We do not construe the ELA to impose a duty upon each employer, engaged in a common enterprise with another, to make safe the equipment and method of work of the other, even though both have a measure of control over the activity in which they are jointly engaged. The injury must result by virtue of the commingling of the ac-

tivities of the two employers and not be solely attributable to the activities or failures of the injured workman's employer. *Browning v. Terminal Ice Co.*, 227 Or 36, 360 P2d 630 (1961).

The second kind of case, in the category in which a person owes a duty to those other than his direct employees, is where he employs a contractor to do the work but retains sufficient right of control over the manner in which the work is conducted to come within the purview of the Act as to the contractor's employees. If plaintiff has a case it is of this kind. The third type of case in the second category is where a person hires a contractor to do the work and retains no right to control the manner or method in which the work is conducted, but nevertheless actually exercises control which results in injury to one of his contractor's workmen. An examination of the cases indicates that at times language appropriate to one kind of case has been adopted and used in another kind of case to which it is not particularly appropriate.

In the present case there is no dispute as to the terms of the written contract between defendant and Tyee which also bound King, though there is a dispute as to their ultimate legal effect. The contract provides for a lump sum to be paid for the accomplishment of a specified result in which the contractor, at his expense, furnishes all labor, equipment and part of the materials. He pays a penalty for failure to finish the work within a specified time. If the work is not completed in accordance with specifications, and the defendant is required to correct the deficiencies, the cost of such corrections is the contractor's. He furnishes a bond to the owner for the performance of the work in accordance with the agreement. If any loss or damage occurs from fire or other cause it is the contractor's obliga-

tion to repair or replace the work at his own expense. He warrants all work done and material furnished and installed to be free from defects for a year from the work's acceptance by defendant. The contract provides that the contractor is an independent contractor and not an agent or employee of the owner.

The contract also provides that the contractor must take all necessary precautions to protect construction crews from hazards due to energized circuits in the vicinity of the construction. He must maintain an active safety program and must conduct the work with due regard to safety and sanitary requirements and he must comply with all governmental safety ordinances. Where questions arise as to safety methods or suitable protection the contractor must confer with defendant's engineer, but full responsibility for results rests with the contractor. The contractor shall use sufficient light to safeguard workmen doing night work. He is required to provide to defendant a monthly accident report listing the total hours worked, number of lost-time accidents and the number of mandays of lost time. Serious or fatal accidents must immediately be reported to defendant's vice president and others by telephone. In addition to the above conditions the contract contains the following:

"C-6 TO DIRECT WORK

*"The Engineer shall have the right to direct the manner in which all work under this Contract shall be conducted in so far as may be necessary to secure the safe* and proper *progress* and the specified quality *of the work,* and all work shall be done and all material shall be furnished to the satisfaction and approval of the Engineer.

"Whenever, in the opinion of the Engineer, the Contractor has made marked departures from the schedule of completion laid down in the Agreement

or when untoward circumstances force a departure from the said schedule, the Engineer, in order to assure the carrying out of the schedule and the provisions of the Agreement, shall direct the order and method of conducting the work." (Emphasis ours.)

\* \* \* \* \*

"C-7 TO ORDER MODIFICATIONS OF METHODS AND EQUIPMENT

"*If at any time the Contractor's methods, materials, or equipment appear to the Engineer to be unsafe*, inefficient, or inadequate *for securing the safety of the workmen* or the public, the quality of work or the rate of progress required, *he may order the Contractor to increase their safety*, efficiency, and adequacy; *and the Contractor shall comply* with such order. If at any time the Contractor's working force and equipment, in the opinion of the Engineer, shall be inadequate for securing the necessary progress, as herein stipulated, the Contractor shall, if so directed, increase the working force and equipment to such an extent as to give reasonable assurance of compliance with the schedule of completion. *The failure of the Engineer to make such demands shall not relieve the Contractor of his obligation to secure* the quality, *the safe conducting of the work,* and the rate of progress required by the Contract; and *the Contractor alone shall be and remain liable and responsible for the safety,* efficiency, and adequacy *of his methods, materials, working force, and equipment,* irrespective of whether or not he makes any change as a result of any order or orders received from the Engineer." (Emphasis ours.)

In addition to the foregoing, the contract also contains the following provisions:

"C-30 CHARACTER OF EMPLOYEES

"The Contractor shall immediately remove from the work, whenever requested to do so by the Owner,

any person considered by the Owner to be incompetent or disposed to be disorderly, or for any other reason unsatisfactory or undesirable to the Owner, and such person shall not again be employed on the work without the consent of the Owner."

■ Where the provisions of the contract are undisputed and the question is whether the right to control retained thereunder by the owner over the work is sufficient to bring him within the purview of the ELA, the question is one of law for the court.

■ The plaintiff contends that because the contract gave the defendant the right to control the safety with which the work was performed, the contract also imposed upon the defendant the duty under the Act to take precautions for plaintiff's safety. When deciding whether an owner's retention of control over the work of a contractor will impose upon the owner the duties specified in the ELA, inquiry must be made concerning the *kind* of control retained. The same kind of control by an owner over the activities of a contractor is not required in all instances in which the owner's responsibility comes into question. For example, the kind of control by an owner which would make him responsible for unemployment insurance for his contractor's employees may be entirely different than the kind of control which would make him responsible for the safety of the same employees at common law. The nature of the control that will impose liability in a given circumstance depends upon what the law is attempting to accomplish by the imposition of the liability in question.

■ The purpose of the ELA is the maximum protection of workmen engaged in hazardous occupations. Therefore, before the retained right of control by an owner should give rise to liability, that retained right

of control should bear some relation to the creation of a risk of danger to workmen resulting from dangerous working conditions.

■ By the provisions of the contract, the contractor was primarily responsible for the safety of the work. Defendant had the right to step in and exercise greater safety precautions, or to require the contractor to do so, if the defendant thought the contractor's methods were inadequate for that purpose. The right of defendant to take over control to attain a greater degree of safety created no risk of danger to plaintiff. Before any such right to control would relate to the creation of a risk to plaintiff, the contract would have to create a situation where the contractor would probably be less diligent concerning safety because of an expectancy that defendant would exercise the necessary care. This was not the situation in the present case because the duty to maintain safety remained the primary duty of the contractor.

The retention of the right by owners to direct the manner in which the work is done, if necessary to secure greater safety, tends to promote the same policy as that of the ELA. An owner who reserves the right to impose or require safety precautions for the benefit of his contractor's workmen derives no possible pecuniary benefit from the reservation because he has contracted for a finished product. Therefore, if duties not otherwise required of owners are imposed because of the reservation of a right to require safety precautions, it is obvious that owners will not actively concern themselves with the workmen's safety. As a result, the imposition of liability under the Act, because of a reservation of the right to impose safety measures, would defeat the very purpose the Act was designed to accomplish. Such an imposition of liabil-

ity is contrary to the policy of the Act where no risk is created that the contractor will fail in his duties to his employees.

There are reservations of control by defendant previously enumerated other than the right to increase safety to the contractor's workmen. When the contract is taken by its four corners, we do not believe that these reserved rights of control over the work, when compared to the control King had a right to exercise, have sufficient relation to the method and manner in which the work was to be performed to bring defendant within the purview of the Act.

■ Plaintiff contends that defendant exercised actual physical control over the work in question and that this exercise of control, together with defendant's right to control under the contract, was sufficient to bring defendant within the Act. Plaintiff relies on three instances of control exercised by defendant. On one occasion, defendant's inspector told one of the contractor's workmen to desist in cutting with an axe the steel bands around the bundled members for the tower. On another occasion, defendant directed that it was unnecessary to drive pilings under the footings of particular towers because the ground was solid enough to give sufficient support without them. On still another occasion, defendant required the plaintiff to change the location of footings which were out of line. These instances failed to demonstrate such control as would bring defendant within the purview of the Act because they related to the securing of the ultimate result agreed to be furnished. Two of the instances related to the stress which the tower would withstand in relation to its footings. The other concerned having the tower members weakened by having their galvanizing impaired by being inadvertently

nicked by an axe blade. There was no evidence of an attempt by defendant to control the method and manner of the work. The only exercise of control was for the purpose of securing the ultimate result for which defendant had contracted.

We come to the conclusion that there was neither the retention nor the exercise of control sufficient to impress upon defendant the duties imposed by the ELA.

■ Plaintiff also contends that he was entitled to go to the jury on his claim of common law negligence. Before owing any duty to plaintiff at common law, defendant must retain the right to exercise sufficient control over the work to make the contractor and, thus, plaintiff his servants. After considering the contract as a whole, it is our opinion that defendant did not retain sufficient control to make plaintiff his employee. Plaintiff does not contend he was the servant of defendant. Rather, he alleges that he was the employee of King. For an extended discussion of the manner in which a contract should be analyzed to make such a determination see *Jenkins v. AAA Heating*, 245 Or 382, 421 P2d 971 (1966).

■ Plaintiff contends that the work defendant contracted to King was inherently dangerous and, therefore, the defendant had a non-delegable duty to see that it was done safely. He bases this claim upon the rule set forth in Restatement (Second) of Torts § 427 (1965), which provides as follows:

"One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for phys-

ical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

It is apparent from the cases cited in the Reporter's Notes and the examples set forth under the section that "such others" to whom the duty is owed does not include employees of the independent contractor. The rule is not applicable.

Plaintiff failed to prove that defendant owed any duty to him, the breach of which resulted in his injury.

The judgment of the trial court is modified and the case is remanded with directions to enter plaintiff's verdict and then grant defendant a judgment notwithstanding the verdict.