Argued and submitted August 7, 2000, reversed and remanded March 21, 2001

## E. Max WOODBURY II,
*Respondent,*

*v.*

## CH2M HILL, INC.,
a Florida corporation,
*Appellant.*

(9706-04494; CA A103037)

21 P3d 153

M. Elizabeth Duncan argued the cause for appellant. With her on the briefs was Greene & Markley, P.C.

James S. Coon argued the cause for respondent. With him on the brief were Raymond F. Thomas, Douglas A. Swanson, and Swanson, Thomas & Coon.

Robert E. Babcock filed a brief *amicus curiae* for Continental Casualty Company, Inc.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiff was injured while working for a subcontractor on a construction site. He initiated this action against defendant, the general contractor CH2M Hill, Inc., for violation of the Employer Liability Act (ELA), ORS 654.305 *et seq.*, and for negligence. The jury returned a verdict for plaintiff on both claims, and defendant appeals. Among other things, defendant assigns error to the trial court's denial of motions for directed verdict on the ELA and negligence claims. According to defendant, the evidence is legally insufficient to support a claim against the general contractor. We agree and reverse and remand for entry of judgment in favor of defendant.

We state the facts in the light most favorable to plaintiff, who prevailed at trial. *Cole v. Ford Motor Co.*, 136 Or App 45, 49, 900 P2d 1059 (1995). Reynolds Metal Company (Reynolds) hired defendant to conduct an environmental remediation investigation at a Reynolds plant in Troutdale, Oregon. Defendant, in turn, hired several subcontractors to perform certain work at the site. Stratus Corporation (Stratus) was one of those subcontractors.

Stratus was owned and operated by Scott Flaherty. It had no full-time employees and fulfilled its own employment needs by hiring temporary employees. One such "temporary" employee was plaintiff, who had worked exclusively for Stratus for over a year when he was hired to work on the Reynolds job.

Defendant and Stratus executed a contract, which included the following terms:

"ARTICLE 2.   OBLIGATIONS OF SUBCONTRACTOR

"**A.   Independent Contractor**

"SUBCONTRACTOR will perform all Work under this AGREEMENT as an independent Contractor and will not be considered as an agent of CH2M HILL or CLIENT, nor will SUBCONTRACTOR's lower-tier subcontractors or employees be agents of CH2M HILL or CLIENT.

"* * * * *

## "J. Safety

"SUBCONTRACTOR will be solely and completely responsible for conditions of the jobsite, including safety of all persons (including employees) and property during performance of the Work. This requirement will apply continuously and not be limited to normal working hours. Safety provisions will conform to * * * applicable federal, state, county and local laws, ordinances, codes, and any regulations that may be detailed in other parts of this SUBCONTRACT, including applicable site-specific health and safety plans. Where any of these are in conflict, the more stringent requirement will be followed. * * *

"* * * * *

"ARTICLE 3.   OBLIGATIONS OF CH2M HILL

"* * * * *

## "C.   Duties and Responsibilities of CH2M HILL

"CH2M HILL reserves the right, but not the obligation, to inspect or otherwise evaluate the Work during the various stages to observe the progress and quality of the Work and to determine, in general, if the Work is proceeding in accordance with the intent of this AGREEMENT. CH2M HILL will not be required to make comprehensive or continuous inspections to check quality or quantity of the Work. Visits and observations made by CH2M HILL will not relieve SUBCONTRACTOR of its obligation to conduct comprehensive inspections of the Work, to furnish materials, to perform acceptable Work, and to provide adequate safety precautions in conformance with this AGREEMENT.

## "D.   Limitations of CH2M HILL'S Responsibilities

"CH2M HILL will not be responsible for SUBCONTRACTOR's means, methods, techniques, sequences or procedures of the Work, or the safety precautions including compliance with the programs incident thereto. CH2M HILL will not be responsible for SUBCONTRACTOR's failure to perform the Work in accordance with this AGREEMENT.

"CH2M HILL will not be responsible for the acts or omissions of SUBCONTRACTOR, or any lower-tier subcontractors, or any of its or their agents or employees or any

other persons at the site or otherwise performing any of the Work."

(Uppercase and boldface in original.)

Defendant hired Stratus, among other things, to construct a "vehicle decontamination pad" at the Reynolds site. This required Stratus to install a means of processing liquid waste from the decontamination pad. Defendant told Stratus to install a water pipe from the pad to a clarifier tank to accomplish the task. Defendant further told Stratus where to locate the pipe and what kind of materials to use. All of the Stratus work was performed by Flaherty and plaintiff.

Most of the pipe was installed underground. In order to reach the clarifier tank, however, the last few feet of pipe had to be installed over a sunken stairway and corridor that ran approximately ten feet below ground level. Flaherty discussed with Griffin, one of defendant's employees, how to suspend the pipe over the stairway and corridor. They decided to construct a platform made of four-by-four and two-by-four boards and plywood. Later, Griffin recalled that the idea to construct the platform was Flaherty's. Flaherty could not remember how the decision was arrived at. Both agreed, however, that, once they decided to build the platform, the details of how to construct it were left to Flaherty. Plaintiff and Flaherty then built the platform without input from or oversight by any of defendant's employees.

When the remediation work was complete, Stratus was required to dismantle the platform supporting the pipe to the clarifier tank. Because Flaherty was occupied with other work, plaintiff attempted to dismantle the platform by himself. No employee of defendant's assisted. Nor did any employee of defendant's provide instructions, offer advice, or provide oversight. While dismantling the platform, plaintiff wore no fall-protection harness. In the course of attempting to move one of the boards from the platform, he lost his balance and was seriously injured when he fell onto the subsurface corridor.

Plaintiff brought two claims against defendant. First, he asserted that defendant violated the ELA. According to plaintiff, defendant at least indirectly employed him

and, as his employer, failed to comply with various safety regulations applicable to employers at construction sites. In particular, plaintiff complained that defendant had failed to require the installation of guardrails on the platform and to provide plaintiff with training concerning the hazards of working in areas where there may be fall hazards. Second, plaintiff asserted that defendant was negligent in failing "to provide proper training and supervision for the disassembly of the platform."

At trial, defendant moved for a directed verdict on both claims. The trial court denied the motion and sent the case to the jury, which returned a verdict for plaintiff, awarding substantial economic and noneconomic damages.

On appeal, defendant first assigns error to the denial of the motion for a directed verdict as to the ELA claim. Defendant argued that it was not liable as a matter of law, because it was not plaintiff's employer, either direct or indirect. Plaintiff concedes that defendant was not his direct employer, but insists that it was his indirect employer because it either retained the right to control or actually did control his work. Defendant replies that, under the express terms of the contract with Stratus, defendant did not have the right to control plaintiff's work and that, in fact, it exercised no control over the disassembly of the platform. We agree with defendant.

■ In reviewing a denial of a directed verdict motion, we examine the record in the light most favorable to the plaintiff to determine if there is any evidence to support the verdict. *Cole*, 136 Or App at 49.

■■ The ELA imposes a heightened standard of care on employers and others who are in charge of work involving "risk or danger." *Miller v. Georgia Pacific*, 294 Or 750, 753, 662 P2d 718 (1983). ORS 654.305 provides:

> "Generally, all owners, contractors or subcontractors and other persons having charge of, or responsibility for, any work involving a risk or danger to the employees or the public shall use every device, care and precaution that is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or

device, and without regard to the additional cost of suitable material or safety appliance and devices."

Because of its broad language, the ELA has been read to apply not only to direct employers but also to "indirect" employers. *Wilson v. P.G.E. Company*, 252 Or 385, 390-92, 448 P2d 562 (1968); *Brown v. Boise-Cascade Corp.*, 150 Or App 391, 396, 946 P2d 324 (1997), *rev den* 327 Or 317 (1998). "Indirect" employer liability is triggered if any of three conditions is satisfied: (1) plaintiff's direct employer and defendant are engaged in a "common enterprise"; (2) defendant retained the right to control the manner or method in which the risk-producing activity was performed; or (3) defendant actually controlled the manner or method in which the risk-producing activity was performed. *Brown*, 150 Or App at 396.

In this case, plaintiff concedes that defendant and Stratus were not engaged in a common enterprise. He argues that defendant nevertheless is an indirect employer because it either retained the right to control or actually controlled the manner or method in which the risk-producing activity was performed.

We begin with the question whether plaintiff offered any evidence that established the requisites for liability under the retained-control test. Under that test, there may be liability under the ELA if the defendant "retain[ed] a right to control * * * the manner or method in which the risk-producing activity [was] performed." *Miller*, 294 Or at 754. The fact that defendant retained some control over some aspects of plaintiff's work will not suffice; the retained right of control must concern the "manner or method in which the risk-producing activity [was] performed." *Id.*

Two recent decisions from this court illustrate the point. In *Brown*, the plaintiff was injured when he fell from a Boise Cascade Corporation paper mill that he was painting. He asserted an ELA claim against Boise Cascade, based on the company's failure to provide guardrails or other fall-protection devices. According to the plaintiff, Boise Cascade was an indirect employer under, among other criteria, the retained-control test, because his work order specified that his work was to be completed in accordance with the directions of a Boise Cascade representative. We held that the

work order was insufficient to create liability under the ELA, because it was issued pursuant to a contractor services agreement that expressly provided that the plaintiff was hired as an independent contractor and that the company had no power to control the manner of his work except as necessary to permit it to inspect the work to ensure compliance with specifications. *Brown*, 150 Or App at 398. Moreover, we held, the work order itself merely "pertained solely to the scope" of the plaintiff's work, not the "manner or method" of his performance. *Id.* (emphasis omitted). That is to say, Boise Cascade retained the right to tell the plaintiff *where* to paint, but not *how* to paint. *Id.*

Similarly—and even more directly to the point—in *George v. Meyers*, 169 Or App 472, 10 P3d 265 (2000), the defendant general contractor hired a subcontractor to frame a house. The plaintiff was one of the subcontractor's employees. The plaintiff completed the framing of three walls on the third floor of the house, but was unable to complete the fourth wall until a large bundle of two-by-four boards could be moved. As he attempted to move the boards, the plaintiff slipped and fell backwards off the third floor. The plaintiff brought an action against the general contractor under the ELA. The trial court dismissed the claim, and we affirmed. On appeal, the plaintiff argued that the trial court erred, because the general contractor had retained control over his work. We disagreed, holding that

> "there is no evidence that defendant retained control over the method and manner of [the subcontractor's] performance and, particularly, the 'risk-producing activity' of moving the bundle of lumber. Rather, all evidence is to the contrary—*i.e.*, defendant's retained control pertained solely to the *scope* of the work, *viz.*, whether defendant's performance comported with the architectural design."

*Id.* at 477 (citation omitted).

In this case, the "risk-producing activity" was the disassembly of the platform. There is no evidence that defendant retained control over that activity. Indeed, all the evidence is to the contrary. As in *Brown*, the agreement between defendant and Stratus clearly identifies Stratus as an independent contractor and further provides that Stratus "will be

solely and completely responsible for conditions of the jobsite, *including safety of all persons (including employees)* and property during performance of the Work." (Emphasis added.) Defendant expressly disclaimed any responsibility for Stratus's "means, methods, techniques, sequences or procedures of the Work, *or the safety precautions* including compliance with the programs incident thereto." (Emphasis added.)

Moreover, as in both *Brown* and *George*, the authority that defendant did retain in this case concerned the *scope* of Stratus's work only:

> "CH2M HILL reserves the right, but not the obligation, to inspect or otherwise evaluate the Work during the various stages to observe the progress and quality of the Work and to determine, in general, if the Work is proceeding in accordance with the intent of this AGREEMENT. * * * Visits and observations made by CH2M HILL will not relieve SUBCONTRACTOR of its obligation to conduct comprehensive inspections of the Work, to furnish materials, to perform acceptable Work, and to provide adequate safety precautions * * *."

In other words, defendant may have retained the authority to tell Stratus to disassemble the platform and may even have retained the authority to inspect the work, but it did not retain the authority to tell Stratus how to do the work.

Plaintiff insists that, for three reasons, the evidence is sufficient to raise at least a jury question as to the scope of the authority that defendant retained. We find none of those arguments persuasive.

■  Plaintiff first insists that the "risk-producing activity" must be more broadly interpreted to include all of Stratus's work for defendant, or at least the "work over the stairwell," and not just the specific activity that caused plaintiff's injuries.[1] In support of that contention, plaintiff quotes selected portions of the Supreme Court's decisions in *Thomas*

---

[1] Actually, it is difficult to pin down precisely what plaintiff believes to be the proper scope of the risk-producing activity. At various points in his briefing, he suggests that the proper focus is the decision to "run the two-inch pipe above the stairwell," or more generally "working over the stairwell," or even more generally "working at height."

*v. Foglio*, 225 Or 540, 358 P2d 1066 (1961), and *Sacher v. Bohemia*, 302 Or 477, 731 P2d 434 (1987), in which the court imposed liability on indirect employers who were more generally involved with the plaintiffs' work.

Neither case, however, involved the retained-control test; rather, both were resolved under the "common enterprise" test. Moreover, although *Thomas* and *Sacher* at some points generally referred to common enterprise liability in broader terms, in both cases, those broader formulations are followed by narrowing qualifications that plaintiff ignores.

In *Thomas*, for example, the court began by commenting that the ELA had been construed liberally to cover situations in which the defendant cooperated in accomplishing work in which both the defendant and the plaintiff's employer were interested. 225 Or at 546-47. But then, the court stated that

"this participation must be more than a common interest in an economic benefit which might accrue from the accomplishment of the task; the defendant or his employee and plaintiff's employer *must actively join in a physical way in carrying on the particular work which produces the injury.*"

*Id.* at 547 (emphasis added; citations omitted).

*Sacher* likewise began with a summary of prior holdings liberally construing the provisions of the ELA. 302 Or at 485-86. It then spelled out the elements of common enterprise liability in the following specific terms:

"Thus, the 'common enterprise' test requires, first, that two employers (the plaintiff's actual employer and a third-party defendant employer) participate in a project of which the defendant employer's operations are an 'integral' or 'component' part, *Thomas*; second, the work must involve a risk or danger to the 'employe[e]s or the public,' ORS 654.305; third, the plaintiff must be an 'employee' of the defendant employer * * *; and fourth, *the defendant employer must have charge of or responsibility for the activity or instrumentality that causes the plaintiff's injury*[.]"

*Id.* at 486-87 (emphasis supplied; footnote omitted).

Our recent cases follow suit. *Brown*, for example, examined the prior case law—including *Sacher*—and concluded that common enterprise liability may be imposed only if there is evidence that the defendant exercised control "over the activity or instrumentality that causes the injury." 150 Or App at 396 (quoting *Sacher*, 302 Or at 485).

Finally—and most important—plaintiff's broad reading of the "risk-producing activity" cannot be reconciled with our decision in *George*, which *is* a retained-control case. In *George*, we held that what precipitated the accident was the plaintiff's attempt to move boards to another location to permit him to complete the framing of the third story of the house where he had been working. Thus, the risk-producing activity was the discrete activity of moving the boards, not more generally of framing the house. 169 Or App at 477. So also in this case, what precipitated plaintiff's accident was his attempt to move boards to facilitate the disassembly of the platform. It was not more generally the construction of the platform or the "work over the stairwell."

Plaintiff next insists that the conduct of the parties is sufficient to support a finding that defendant had a right to control the risk-producing activity. Specifically, plaintiff points to evidence that defendant exercised daily control over other aspects of Stratus's work, such as where to dig a hole for a vault associated with the decontamination pad, where to run the pipeline from the pad to the tank, what material to use to backfill the ditch where the pipe was located, at what angle the pipe should be installed, and what sealant should be used to connect it with the tank.

To begin with, resort to evidence of the conduct of the parties when there is an unambiguous contract detailing the rights and responsibilities is inappropriate. As the court explained in *Wilson*,

"[w]here the provisions of the contract are undisputed and the question is whether the right to control retained thereunder by the [defendant] over the work is sufficient to bring him within the purview of the ELA, the question is one of law for the court."

252 Or at 395. In this case, the contract between defendant and Stratus plainly—and repeatedly—places responsibility for the details of the work and, in particular, for compliance with safety regulations on Stratus. Plaintiff insists that the agreement could be read as preserving defendant's authority to control those matters. Yet plaintiff fails to identify any particular provision that is reasonably susceptible to that construction. Aside from that, in relying on such extrinsic evidence, plaintiff assumes that the scope of the "risk-producing activity" is properly defined to include all of Stratus's work, not just the disassembly of the platform. That assumption, as we have stated, is incorrect as a matter of law. We conclude that there is no evidence of liability under the retained-control test.

■    Whether or not defendant retained control, defendant nevertheless may be liable under the ELA if there is evidence that it actually exercised control over the manner and method in which the risk-producing activity was performed. *Wilson*, 252 Or at 397; *Brown*, 150 Or App at 398-99. As we have noted, the "risk-producing activity" in this case was the disassembly of the platform. As to that activity, there is a complete absence of evidence of control on the part of defendant. Plaintiff does not argue to the contrary. His sole argument is that the "risk-producing activity" should be more broadly construed. Again, as we have held, that is incorrect as a matter of law.

There being no basis for concluding that defendant was an indirect employer under the ELA, we conclude that the trial court erred in denying defendant's motion for a directed verdict on plaintiff's ELA claim.

■    Defendant next assigns error to the trial court's denial of a directed verdict motion on plaintiff's negligence claim. The complaint includes several specifications of negligence, the gravamen of which is that "defendant failed to provide proper training and supervision for the disassembly of the platform." Defendant contends that, because the undisputed evidence shows that it had nothing to do with the disassembly of the platform, it cannot be held liable in negligence as a matter of law. Plaintiff's response is:

"The connection between training and supervision and the work methods of those who are to be trained and supervised is plain: One provides training and supervision in order to cause workers to perform their work safely. The evidence was uncontradicted that defendant failed to provide plaintiff, or its own supervisory workers, with any fall protection training or supervision."

Once again, we review the evidence in the record in the light most favorable to plaintiff to determine whether there is any evidence to support the verdict. *Cole*, 136 Or App at 49. In evaluating that evidence we are informed by our decision in *Fortney v. Crawford Door Sales Corp.*, 97 Or App 276, 775 P2d 910 (1989). In that case, the defendant hired a general contractor to supply overhead rolling steel doors at a warehouse site. The plaintiff was an employee of the contractor. When the plaintiff encountered difficulties in installing a door, the contractor called the defendant for assistance. The defendant sent Svir, one of its employees, to assist. While Svir watched from some 15 feet away, the plaintiff scaled a ladder to attempt to work on the door. The plaintiff fell from the ladder and suffered injury. He sued the defendant for negligence and for violations of the ELA. The trial court entered a directed verdict on both claims, and we affirmed. Concerning the negligence claim, we explained:

"[D]efendant and Svir had no responsibility for the safety of the equipment or for plaintiff's job safety. * * *

"Plaintiff relies on *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987), and argues that he was not required to establish a duty on defendant's part in order to reach the jury. Defendant argues that plaintiff's theory necessarily presupposes the 'special relationship' of employer and employe[e], 'where "duty" is still a factor not altered by the holding in *Fazzolari*.' *See Budd v. American Savings & Loan*, 89 Or App 609, 750 P2d 513 (1988). Defendant also contends that plaintiff 'would impose liability for a falling ladder where the defendant did not own it, did not use it and did not touch it.' We agree with defendant's implicit suggestion that, although *Fazzolari* has changed the role of duty in negligence law, it has not eliminated the rule that a defendant must have *some* responsible involvement with an event in order to be found negligent for its occurrence. *See Fuhrer v. Gearhart By The Sea, Inc.*, 306 Or

434, 760 P2d 874 (1988). No involvement was established here."

*Id.* at 280 (emphasis in original).

In this case, as in *Fortney*, defendant had no responsibility for the safety of plaintiff's equipment or for plaintiff's safety. Nor did defendant have any involvement in the disassembly of the platform. Plaintiff's argument that the evidence is uncontradicted that defendant failed to provide any training concerning the proper disassembly of the platform is beside the point; indeed, it simply assumes the very matter in issue, that is, that defendant had the responsibility for doing so in the first place. As we have noted, the evidence is uncontradicted that defendant did not. It necessarily follows that plaintiff's negligence claim must fail and that the trial court erred in denying the motion for a directed verdict on that claim.

Defendant advances a number of other assignments of error, but, because of our disposition of the first two, we need not address them.

Reversed and remanded for entry of judgment in favor of defendant.