Argued and submitted November 5, 2002, decision of Court of appeals reversed and
case remanded to Court of Appeals for further proceedings January 24, 2003
See 189 Or App 375, 76 P3d 131 (2003)

# E. Max WOODBURY II,
*Petitioner on Review,*

*v.*

# CH2M HILL, INC.,
a Florida corporation,
*Respondent on Review.*

(CC 9706-04494; CA A103037; SC S48592)

61 P3d 918

James S. Coon, of Swanson, Thomas & Coon, Portland, argued the cause for petitioner on review. With him on the briefs was Kathryn H. Clarke, Portland.

M. Elizabeth Duncan, of Greene & Markley PC, Portland, argued the cause and filed the briefs for respondent on review.

Robert K. Udziela, Portland, filed briefs on behalf of *amici curiae* Oregon Trial Lawyers Association, Oregon AFL-CIO, and Oregon State Building Trades Council.

James E. Mountain, Jr., and Linda J. Kessel, Eugene, filed a brief on behalf of *amici curiae* Oregon-Columbia Chapter of the Associated General Contractors of America, Associated Oregon Industries, Inc., and American Council of Engineering Companies of Oregon.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, Riggs, and De Muniz, Justices.**

DE MUNIZ, J.

---

** Balmer, J., did not participate in the consideration or decision of this case.

## DE MUNIZ, J.

In this civil action, plaintiff sought recovery for personal injuries suffered in a fall from a construction platform. Although plaintiff worked for a subcontractor, he filed the action against the general contractor, CH2M Hill, Inc. (defendant), alleging liability under the Employer Liability Law (ELL), ORS 654.305 to 654.336,[1] and common-law negligence. At trial, the jury returned a verdict for plaintiff on both theories of liability. Defendant appealed, and the Court of Appeals reversed the judgment on both claims. *Woodbury v. CH2M Hill, Inc.*, 173 Or App 171, 21 P3d 153 (2001). We reverse and remand for further proceedings.

The Court of Appeals described the relevant[2] evidence as follows:

"Reynolds Metal Company (Reynolds) hired defendant to conduct an environmental remediation investigation at a Reynolds plant in Troutdale, Oregon. Defendant, in turn, hired several subcontractors to perform certain work at the site. Stratus Corporation (Stratus) was one of those subcontractors.

"Stratus was owned and operated by Scott Flaherty. It had no full-time employees and fulfilled its own employment needs by hiring temporary employees. One such 'temporary' employee was plaintiff, who had worked exclusively for Stratus for over a year when he was hired to work on the Reynolds job.

"* * * * *

"Defendant hired Stratus, among other things, to construct a 'vehicle decontamination pad' at the Reynolds site. This required Stratus to install a means of processing liquid waste from the decontamination pad. Defendant told Stratus to install a water pipe from the pad to a clarifier tank to accomplish the task. Defendant further told Stratus where to locate the pipe and what kind of materials to use. All of the Stratus work was performed by Flaherty and plaintiff.

---

[1] We refer to the statutory scheme as the Employer Liability Law, because that is how the Oregon Revised Statutes identify the enactment. We note, however, that the Court of Appeals refers to the same statutory scheme as the Employer Liability Act.

[2] We use "relevant" because, as we discuss below, our view of the pertinent factual inquiry is slightly different than that of the Court of Appeals.

"Most of the pipe was installed underground. In order to reach the clarifier tank, however, the last few feet of pipe had to be installed over a sunken stairway and corridor that ran approximately ten feet below ground level. Flaherty discussed with Griffin, one of defendant's employees, how to suspend the pipe over the stairway and corridor. They decided to construct a platform made of four-by-four and two-by-four boards and plywood. Later, Griffin recalled that the idea to construct the platform was Flaherty's. Flaherty could not remember how the decision was arrived at. Both agreed, however, that, once they decided to build the platform, the details of how to construct it were left to Flaherty. Plaintiff and Flaherty then built the platform without input from or oversight by any of defendant's employees.

"When the remediation work was complete, Stratus was required to dismantle the platform supporting the pipe to the clarifier tank. Because Flaherty was occupied with other work, plaintiff attempted to dismantle the platform by himself. No employee of defendant's assisted. Nor did any employee of defendant's provide instructions, offer advice, or provide oversight. While dismantling the platform, plaintiff wore no fall-protection harness. In the course of attempting to move one of the boards from the platform, he lost his balance and was seriously injured when he fell onto the subsurface corridor."

173 Or App at 173-75.

As noted, plaintiff filed an action against defendant alleging two claims. Under the ELL claim, plaintiff asserted that defendant had failed to install guardrails on the platform and to train plaintiff how to avoid the hazards of working in areas where there was a danger of falling. Under the common-law negligence claim, plaintiff alleged that defendant was negligent for failing to provide proper training and supervision for the disassembly of the platform.

At trial, defendant moved for a directed verdict on both claims. The trial court denied the motion and submitted the case to the jury. The jury returned a verdict for plaintiff on both claims and awarded economic and noneconomic damages.

The Court of Appeals reversed, concluding that plaintiff could not recover under either the ELL or negligence theories. The Court of Appeals concluded that there was no evidence that defendant had assumed any obligation to control or had exercised actual control over the method by which Stratus accomplished the work. 173 Or App at 179. That conclusion was sufficient, in the Court of Appeals' view, to defeat both claims.[3]

■　　　　This court reviews the denial of a motion for directed verdict for any evidence to support the verdict in plaintiff's favor. *See Bolt v. Influence, Inc.*, 333 Or 572, 577-78, 43 P3d 425 (2002) (describing standard). This court cannot set aside a jury's verdict unless there was no evidence from which the jury could have found the facts necessary to establish the elements of plaintiff's cause of action. *See* Or Const, Art VII (Amended), § 3 ("no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict"). Instead of weighing the evidence, this court must consider the evidence and inferences therefrom in the light most favorable to plaintiff. *Brown v. J. C. Penney Co.*, 297 Or 695, 705-06, 688 P2d 811 (1984). Because the jury weighed the evidence, judged the credibility of the witnesses, and resolved all conflicts in the evidence, this court may rely on any fact that finds support in the record. *Id.* at 705-06.

■　　　　We begin with the ELL claim. The ELL imposes a heightened statutory standard of care on a person or entity who either is in charge of, or responsible for, any work involving risk or danger. Specifically, ORS 654.305 provides:

> "Generally, all owners, contractors or subcontractors and other persons having charge of, or responsibility for, any work involving a risk or danger to the employees or the public shall use every device, care and precaution that is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or

---

[3] The Court of Appeals noted that, in light of the disposition, it did not reach a number of other assignments of error. *Id.* at 184. Those assignments of error primarily concern evidentiary matters and damages.

device, and without regard to the additional cost of suitable material or safety appliance and devices."

ELL liability can be imposed on a person or entity who (1) is engaged with the plaintiff's direct employer in a "common enterprise";[4] (2) retains the right to control the manner or method in which the risk-producing activity was performed; or (3) actually controls the manner or method in which the risk producing activity is performed. *See Wilson v. PGE Company*, 252 Or 385, 391-92, 448 P2d 562 (1968) (so stating).

The Court of Appeals concluded that plaintiff had failed to prove that defendant retained the right to control the manner or method in which the risk-producing activity was performed. 173 Or App at 182. That conclusion was based on the terms of the contract between defendant and Stratus. *Id.* In reaching it, the Court of Appeals held that under ORS 654.305, the scope of the work involving a risk or danger to the employees was solely the act of disassembling the platform. As we explain below, we need not reexamine the Court of Appeals' conclusion that the contract did not support a finding of a right to control, because our analysis rests on different grounds.

The Court of Appeals also concluded that plaintiff failed to prove that defendant had exercised actual control over plaintiff's work. *Id.* at 182. As discussed below, we conclude that the Court of Appeals erred in that holding, because it defined the work involving risk or danger too narrowly.[5]

---

[4] The parties agree that defendant and Stratus were not engaged in a common enterprise.

[5] The Court of Appeals explained that, under one of its recent ELL cases, *George v. Myers*, 169 Or App 472, 10 P3d 265 (2000), the risk must be construed narrowly:

"[P]laintiff's broad reading of the 'risk-producing activity' cannot be reconciled with our decision in *George* * * *. In *George*, we held that what precipitated the accident was the plaintiff's attempt to move boards to another location to permit him to complete the framing of the third story of the house where he had been working. Thus, the risk-producing activity was the discrete activity of moving the boards, not more generally of framing the house. So also in this case, what precipitated plaintiff's accident was his attempt to move boards to facilitate the disassembly of the platform. It was not more generally the construction of the platform or the 'work over the stairwell.'"

*Woodbury*, 173 Or App at 181 (citation omitted).

■ The phrase "any work involving a risk or danger to the employees" presents the interpretive issue in this case. ORS 654.305. To determine the meaning of that statutory phrase "any work involving a risk or danger to the employees," we use the interpretive template that this court formulated in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). Under that framework, words of common usage are given their "plain, natural, and ordinary meaning." *Id.* at 611. If, after our analysis at the first level, the intent is clear from the text and context, further analysis is unnecessary. *Id.*

■ The words "any work" are inclusive, suggesting that the reference is to the tasks in which the employee was engaged. The phrase "involving a risk or danger" modifies "any work." Thus, identifying the relevant scope of the work for purposes of the ELL requires an initial determination of whether the work involved a risk or danger to the employees or the public. "Risk" and "danger" are both words of common usage. *Webster's Third New Int'l Dictionary* 573 (unabridged ed 1993) indicates that "risk" and "danger" are synonyms for each other, as well as for "peril," "jeopardy," and "hazard." *Webster's* first modern definition of "danger" is "the state of being exposed to harm: liability to injury, pain or loss: PERIL, RISK." *Id.* Similarly, *Webster's* defines "risk" as "the possibility of loss, injury, disadvantage, or destruction: CONTINGENCY, DANGER, PERIL, THREAT." *Id.* at 1961. Thus, as used in ORS 654.305, "risk" or "danger" refers to conditions of the work that create the possibility that a worker will suffer harm.

■ In this instance, the Court of Appeals described the work involving a risk or danger as moving the boards to facilitate disassembly of the platform. 173 Or App at 181. That description, however, is neither complete nor accurate. While moving the boards, plaintiff was working at a dangerous height over a concrete surface. That height created a constant risk of harm to the employees working on that section of the pipeline. During that part of the project, the risk was reduced by building a platform on which plaintiff could stand while installing that section of the pipeline. The work included both the assembly and disassembly of the platform. The height of the work posed a risk of injury to the employees

while the platform was assembled, while it was used to complete the project, and while it was disassembled. The risk of falling, then, was the most obvious potential and foreseeable danger during the installation of that section of the pipeline. We conclude that, under these facts, the "work involving a risk or danger" included requiring plaintiff to work at height during the assembly, use, and disassembly of the platform.

Plaintiff argues that, once the scope of the dangerous work is understood properly, evidence of defendant's actual control of that work is sufficient to sustain the jury's verdict on the ELL claim. In that regard, the record contains the following evidence.

Flaherty, Stratus' principal and plaintiff's supervisor, expected and received detailed instructions from defendant's personnel during the work at the site. In particular, Flaherty relied on defendant's safety coordinator, who was at the job site every day, for guidance on both physical and chemical hazards present in that industrial setting. In addition to the requirement that Stratus construct a decontamination pad, a representative of defendant, Griffin, instructed Flaherty to install the two-inch pipeline for contaminated water that would run to the clarifier tank. Defendant provided Flaherty with detailed instructions as to how the pipeline should be constructed. Most significantly, because the pipeline had to travel over the underground concrete corridor and stairwell that was 10 feet deep, some provision had to be made to facilitate work on the pipeline at that height. Flaherty and Griffin discussed the options. They considered the use of ladders or a fixed platform. Because ladders would not be stable on the kind of ground that was present on either side of the corridor, Flaherty and Griffin jointly decided to use a fixed wooden platform consisting of boards and plywood sheets. Griffin advised Flaherty that he should "build [the platform] sturdy enough" and "long enough to stay in the opening so it doesn't shift one way or the other."

In light of those facts, there was evidence from which the jury reasonably could conclude that defendant exercised actual control both over the decision to use a wooden platform and over the choice of how that platform was constructed. In particular, the jury could have concluded that the platform

was constructed without fall protection that might have protected plaintiff from injury. We conclude that there is evidence in the record to support a jury finding that defendant exercised actual control over the manner or method in which the risk-producing activity (working at height) was performed and, therefore, defendant was liable under the ELL. Under Article VII (Amended), section 3, we are required to sustain the jury's verdict on plaintiff's ELL claim.

The Court of Appeals also reversed the jury's verdict on plaintiff's negligence claim. As with plaintiff's ELL claim, under Article VII (Amended), section 3, this court cannot set aside a jury's verdict unless there is no evidence from which the jury could have found the facts necessary to establish the elements of plaintiff's cause of action.

Defendant's motion for directed verdict against plaintiff's negligence claim was based on the assertion that plaintiff had not offered any evidence that defendant's negligence had caused plaintiff's injuries. Plaintiff's complaint includes several specifications of negligence, essentially alleging that defendant failed to provide proper training and supervision for the disassembly of the platform. As previously noted, there is evidence permitting the jury to find that defendant exercised actual control over safety aspects of the project and, in particular, exercised actual control over that part of the project that required plaintiff to work at a dangerous height. There is also evidence that defendant failed to provide plaintiff and its own supervising employees with any fall protection training or supervision.

A jury reasonably could find that defendant's failure to provide training and supervision in connection with the assembly, use, and disassembly of the platform was a substantial factor in causing plaintiff's fall from the platform. That is sufficient to support the jury's verdict on plaintiff's negligence claim, and the Court of Appeals erred in concluding otherwise.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.