Submitted on remand from the Oregon Supreme Court March 25, affirmed
September 10, 2003

E. Max WOODBURY II,
*Respondent,*

*v.*

CH2M HILL, INC.,
a Florida corporation,
*Appellant.*

(9706-04494; CA A103037)

76 P3d 131

M. Elizabeth Duncan and Greene & Markley, P.C., for appellant.

James S. Coon, Raymond F. Thomas, Douglas A. Swanson, and Swanson, Thomas & Coon for respondent.

Robert E. Babcock, *amicus curiae*, for Continental Casualty Company, Inc.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiff was injured when he fell while disassembling a temporary scaffold at a construction site. He initiated this action against defendant, the general contractor, which had retained plaintiff's employer to perform certain work at the site. He alleged claims for negligence and violation of the Oregon Employer Liability Law (ELL). The jury returned a verdict in favor of plaintiff, awarding economic damages totaling $6,750,000 and noneconomic damages totaling $4,750,000.

Defendant appealed, assigning error to the failure of the trial court to direct a verdict on both the negligence and the ELL claims, to various evidentiary rulings at trial, and to the trial court's failure to limit plaintiff's noneconomic damages in accordance with ORS 18.560, which imposes a $500,000 cap on certain claims. We reversed, concluding that defendant was correct that the trial court erred in failing to direct verdicts on both the negligence and the ELL claims; we therefore did not address plaintiff's other assignments of error. *Woodbury v. CH2M Hill, Inc.*, 173 Or App 171, 21 P3d 153 (2001). The Supreme Court reversed, holding that the trial court correctly denied defendant's directed verdict motions. *Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 61 P3d 918 (2003). The court then remanded the case to us for consideration of the remaining assignments of error. We conclude that the trial court's evidentiary rulings were correct and that the court did not err in failing to cap plaintiff's noneconomic damages. We therefore affirm.

## I. FACTUAL BACKGROUND

We take the facts from our previous opinion:

"Reynolds Metal Company (Reynolds) hired defendant to conduct an environmental remediation investigation at a Reynolds plant in Troutdale, Oregon. Defendant, in turn, hired several subcontractors to perform certain work at the site. Stratus Corporation (Stratus) was one of those subcontractors.

"Stratus was owned and operated by Scott Flaherty. It had no full-time employees and fulfilled its own employment needs by hiring temporary employees. One such 'temporary' employee was plaintiff, who had worked exclusively for Stratus for over a year when he was hired to work on the Reynolds job.

"* * * * *

"Defendant hired Stratus, among other things, to construct a 'vehicle decontamination pad' at the Reynolds site. This requires Stratus to install a means of processing liquid waste from the decontamination pad. Defendant told Stratus to install a water pipe from the pad to a clarifier tank to accomplish the task. Defendant further told Stratus where to locate the pipe and what kind of materials to use. All of the Stratus work was performed by Flaherty and plaintiff.

"Most of the pipe was installed underground. In order to reach the clarifier tank, however, the last few feet of pipe had to be installed over a sunken stairway and corridor that ran approximately ten feet below ground level. Flaherty discussed with Griffin, one of defendant's employees, how to suspend the pipe over the stairway and corridor. They decided to construct a platform made of four-by-four and two-by-four boards and plywood. * * *

"When the remediation work was complete, Stratus was required to dismantle the platform supporting the pipe to the clarifier tank. Because Flaherty was occupied with other work, plaintiff attempted to dismantle the platform by himself. * * * While dismantling the platform, plaintiff wore no fall-protection harness. In the course of attempting to move one of the boards from the platform, he lost his balance and was seriously injured when he fell onto the subsurface corridor.

"Plaintiff brought two claims against defendant. First, he asserted that defendant violated the [ELL]. According to plaintiff, defendant at least indirectly employed him and, as his employer, failed to comply with various safety regulations applicable to employers at construction sites. In particular, plaintiff complained that defendant had failed to require the installation of guardrails on the platform and to provide plaintiff with training concerning the hazards of working in areas where there may be fall hazards. Second, plaintiff asserted that defendant was negligent in failing 'to

provide proper training and supervision for the disassembly of the platform.' "

*Woodbury*, 173 Or App at 173-76.

## II. DISPOSITION OF THE MERITS

The remaining assignments of error are (1) the trial court erred in failing to order a new trial because some of plaintiff's specifications of negligence were based on violations of administrative rules that, as a matter of law, do not apply; (2) the trial court erred in admitting a videotaped reenactment of what plaintiff asserted was the proper construction and dismantling of the platform from which he fell; (3) the trial court erred in allowing testimony that the platform did not have guardrails; (4) the trial court erred in admitting certain safety manuals; and (5) the trial court erred in failing to cap plaintiff's noneconomic damages on his ELL claim. We address each assignment in turn.

A. *Motion for a new trial*

Plaintiff's sixth amended complaint asserted defendant's negligence in the following particulars:

"(a) In failing to establish and train workers in following a written safety plan/contractor's safety guideline for the construction project containing safety requirements for the supervision, installation, use and teardown of temporary work platforms or scaffolds;

"(b) In failing to require through its day-to-day supervision that the work platform or scaffold from which plaintiff fell conform to the detailed safety plan and that the workers involved with it be adequately trained about fall protection;

"(c) In failing to adequately inspect and supervise the assembly, use, and disassembly operation of the platform or scaffold;

"(d) In failing to conduct regular contractor meetings providing plaintiff with clear procedures for identifying fall hazards and avoiding injuries from falls;

"(e) In failing to properly train and supervise its own workers regarding the necessity for fall protection

during installation, use, and disassembly of a temporary work platform or scaffold; and

"(f)   In failing to provide competent supervision for the dismantling of a scaffold."

Defendant argues that three of those allegations—paragraphs (b), (d), and (e)—are based on alleged violations of Oregon Occupational Safety and Health Administration rules pertaining to fall protection. Defendant moved to strike those allegations; the trial court denied the motion. At the close of the evidence, defendant renewed its motion, which was denied.

■      Defendant now argues that the trial court erred in denying the motion for a directed verdict and that it is entitled to a new trial. According to defendant, because the challenged specifications were submitted to the jury, and because the verdict form did not specify the basis for the jury's negligence verdict, under the "we can't tell" rule of *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 357, 788 P2d 428 (1990), it is entitled to a new trial.

The short answer to defendant's argument is that, since the briefing in this case, the Oregon Supreme Court has abandoned the "we can't tell" rule and overruled *Whinston*, or at least that aspect of the decision, in *Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 168-74, 61 P3d 928 (2003). We reject the assignment of error without further discussion.

B.   *Admissibility of the videotape*

■      During trial, plaintiff offered a videotape that purported to demonstrate the proper construction and dismantling of a platform. Included in the videotape is a depiction of a worker donning a safety harness. Defendant objected to the introduction of the videotape on the ground that the manner in which the worker connected his harness to a guardrail violated state safety regulations:

"[T]he belt, the line that runs for the holding of the harness runs up to the guardrail system, around the catwalk, the platform above the stairwell. And the OSHA, the 29 CFR 1926.502 as incorporated by Oregon law, specifically provides in subparagraph 23 that personal fall protection systems shall not be attached to guardrail systems."

Defendant further argued:

> "* * * [W]e don't contest that the work could be done with a harness on, we contest that there was a legitimate connection for it. And that is an issue that the—that the experts or the witness should—should be contesting in their respective opinions. But the video adds absolutely nothing to that."

Defendant also objected that the videotape was prejudicial. The trial court overruled the objection.

Experts from both sides then testified without objection concerning the propriety of attaching a safety harness to a guardrail. Plaintiff's expert testified that a safety harness should not be attached to guardrails "unless certain other qualifications are met." He testified that qualified persons can authorize attachments of harnesses to appropriately supported guardrails. He explained that an appropriately supported guardrail would hold 5,000 pounds or maintain a safety factor of two and that the guardrail depicted in the video could hold 72,000 pounds with a safety factor of approximately 20. Defendant's expert testified that the attachment depicted in the video was improper and that the exception that plaintiff's expert described was "very tricky."

On appeal, defendant assigns error to the admission of the videotape, in particular, the depiction of the worker attaching the safety harness to the guardrail. Defendant argues that the evidence is irrelevant, given that attaching a safety harness to a guardrail in the manner depicted in the videotape violates applicable OSHA regulations, and that, even if relevant, is unduly prejudicial. Plaintiff responds that the evidence is relevant and is not unfairly prejudicial. Even if the videotape was erroneously admitted, plaintiff argues, the error was harmless in light of the extensive testimony from the expert witnesses as to the very same matter. We agree with plaintiff that the error, if any, was harmless.

OEC 103(1) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]" In *Jett v. Ford Motor Co.*, 335 Or 493, 72 P3d 71 (2003), the defendant objected to the introduction of a safety manual in a personal injury case involving a plaintiff truck driver who had left a

delivery truck without first engaging the emergency brake. The Supreme Court held that, even assuming that the trial court erred in admitting the evidence of the safety manual, the error was harmless in light of expert testimony about the standard of care for a delivery truck driver in the plaintiff's situation. *Id.* at 500-01.

So also in this case, even assuming that it was error for the trial court to have admitted the videotaped depiction of a worker attaching a safety harness to a guardrail, the fact remains that there was expert testimony that it was proper to do so. The error, if any, was harmless.

C. *Evidence of the absence of a guardrail*

■ Before trial, defendant moved to exclude any evidence that the platform lacked a guardrail. According to defendant, evidence of the absence of a guardrail was irrelevant, because the lack of a guardrail had nothing to do with the manner in which plaintiff fell. Defendant argued that the evidence also was a prior bad act inadmissible under OEC 404(3). Plaintiff agreed that the lack of a guardrail had nothing to do with the manner in which he fell. Plaintiff argued that the evidence was relevant to the lack of proper supervision and training as to the proper assembly, use, and disassembly of such platforms. The trial court agreed with plaintiff:

> "If the handrail is indeed required, and [that's] contested, its absence is certainly some evidence of failure to supervise, to properly train, and to design—let's see, failing to supervise—failing to inspect and supervise assembly adequately, and failing to establish and train workers when following a plan.
>
> "\* \* \* \* \*
>
> "For example, if somebody is injured as a result of an electrical hazard on a worksite, and the allegation is that there was no inspection or supervision to deal with the electrical hazards, the fact that there was an exposed hot wire swinging back and forth over the work space is some evidence that nobody inspected and remedied such hazards. Nobody was looking for those hazards.

"It's not a prior bad act. It's evidence of a degree of inattention to that detail. So the motion is denied."

On appeal, defendant assigns error to the denial of the motion *in limine*. It reiterates its argument that, because the absence of a rail had nothing to do with plaintiff's fall, such evidence is inadmissible. Plaintiff reiterates its argument that defendant has missed the point, that the evidence is relevant to its allegations of failure to inspect and supervise and that, even if erroneously admitted, the evidence was harmless. We agree with plaintiff.

■■ We review rulings on relevance for errors of law. *State v. Minchue*, 173 Or App 520, 523, 24 P3d 386 (2001). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. The rule "establishes a very low threshold for the admission of evidence." *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999) (internal quotation marks omitted).

In this case, plaintiff's allegations of negligence are not limited to the specific mechanism of his fall from the platform during its disassembly and included allegations that, among other things, defendant "fail[ed] to adequately inspect and supervise the assembly, use, and disassembly operation of the platform or scaffold." The failure to maintain a guardrail during the use of the platform is at least minimally relevant to that allegation.

■ Under OEC 404(3), evidence of a prior bad act of negligence is not admissible to prove a specific, other act of negligence. It is, however, admissible "to prove the existence of a continuing defect or a continuing course of negligent conduct, and that the condition or course of conduct is in fact dangerous, or that the defendant had notice of its dangerous character." *Rader v. Gibbons and Reed Company*, 261 Or 354, 359, 494 P2d 412 (1972). As pertinent here, we review decisions concerning the admissibility of other act evidence to determine, first, whether it is independently relevant and, second, whether it is unduly prejudicial. We review the former question as a matter of law, *Rugemer v. Rhea*, 153 Or App 400, 405-06, 957 P2d 184 (1998), and the latter for an

abuse of discretion, *Wallace v. Hinkle Northwest, Inc.*, 79 Or App 177, 182-83, 717 P2d 1280 (1986).

In this case, plaintiff did not offer the evidence of defendant's failure to install a guardrail as evidence of some other act of negligence. Instead, the evidence was offered to show a continuing course of negligent conduct—again, defendant's failure "to adequately inspect and supervise the assembly, use, and disassembly operation of the platform or scaffold." As discussed above, the evidence is relevant for that purpose. As for prejudice, we note that defendant's only argument is that the evidence is unfairly prejudicial because it is irrelevant. In light of our conclusion to the contrary as to relevance, we conclude as well that the trial court did not abuse its discretion in determining that the evidence was not unfairly prejudicial.

D. *Evidence of safety manuals*

■ Before trial, defendant moved to exclude evidence of private health and safety manuals adopted by defendant and by Reynolds, one of its subcontractors, both of which, defendant argued, articulated an inappropriate standard of safety that is above what is required by the law. Plaintiff argued that the manuals were relevant and not unfairly prejudicial. The trial court agreed.

On appeal, defendant again contends that the evidence of the private safety manuals was inadmissible. Defendant argues that, while government safety standards may be admissible to prove a standard of care, private safety manuals are not. Plaintiff argues that private safety manuals are not categorically inadmissible, particularly when offered to prove the reasonableness of conduct in a common-law negligence—as opposed to a negligence *per se*—case. Once again, we agree with plaintiff.

■ Relevance is a question of law. *Minchue*, 173 Or App at 523. We addressed the question whether internal company safety manuals are relevant in *Jett v. Ford Motor Company*, 183 Or App 260, 52 P3d 441 (2002), *rev'd on other grounds*, 335 Or 493, 72 P3d 71 (2003). The defendant offered evidence of its own internal safety rules concerning the proper parking and braking of a delivery truck. The plaintiff objected to the

admissibility of the rules on the ground that they were only private rules and not governmental safety regulations and that they expressed a standard "higher than the law." *Id.* at 268. We held that the internal safety rules were relevant as evidence of the reasonableness of the plaintiff's conduct in that common-law negligence case. *Id.* The same reasoning applies in this case.

The remaining question is whether the admission of defendant's safety rules in this case was unfairly prejudicial. We review the trial court's decision in that regard for an abuse of discretion. *Blume v. Fred Meyer, Inc.*, 155 Or App 102, 108, 963 P2d 700 (1998).

In this case, defendant argues that the admission of the internal safety rules likely confused the jury. Its argument, however, is predicated on an erroneous assumption that the jury could not consider the evidence of the internal safety rules in the first place. As we noted in *Jett*, that evidence properly may be taken into consideration in determining whether a defendant has acted in a reasonable manner. 183 Or App at 268. We conclude that the trial court did not abuse its discretion.

E. *Failure to cap noneconomic damages on ELL claim*

Finally, defendant argues that the trial court erred in failing to cap plaintiff's noneconomic damages on his ELL claim pursuant to ORS 18.560(1), which provides, in part:

> "Except for claims subject to * * * ORS chapter 656, in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person * * *, the amount awarded for noneconomic damages shall not exceed $500,000."

Plaintiff argues that, because the jury found for him on both the negligence and the ELL claims, and because the jury awarded the same damages on both claims, defendant's argument is academic. That is so, plaintiff argues, because the Oregon Supreme Court held in *Lakin v. Senco Products*, 329 Or 62, 987 P2d 463, *on recons*, 329 Or 369, 987 P3d 476 (1999), that ORS 18.560(1) is unconstitutional as applied to common-law negligence claims. We agree with plaintiff. In

*Lakin*, an award in excess of the statutory cap for both negligence and strict products liability was upheld on the ground that negligence awards were a jury question in 1857 and under Article I, section 17, of the Oregon Constitution, such "common-law actions carry with them fundamental rights to a jury determination of the right to receive, and the amount of, damages." *Lakin*, 329 Or at 77. Similarly, in this case, the jury awarded noneconomic damages based on both the negligence and ELL claims. Under *Lakin*, the award must be upheld.

Affirmed.