514 September 24, 2025 No. 824

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Justin BOCK,
*Plaintiff-Appellant,*

*v.*

VIGOR WORKS LLC,
an Oregon limited liability company;
Vigor Industrial LLC,
an Oregon limited liability company;
and Liitaa Development, LLC,
an Oregon limited liability company,
*Defendants-Respondents.*

Multnomah County Circuit Court
22CV33415; A183526

Lynn R. Nakamoto, Senior Judge.

Argued and submitted August 8, 2025.

J. Randolph Pickett argued the cause for appellant. Also on the opening brief were Rachel M. Jennings, Pickett Dummigan Weingart LLP; Peter O. Hansen, and Law Office of Peter O. Hansen. Also on the reply brief were Juliana B. Minn, Pickett Dummigan Weingart LLP; Peter O. Hansen, and Law Office of Peter O. Hansen.

Noah S. Jaffe argued the cause for respondents Vigor Works LLC and Vigor Industrial LLC. On the brief were Chris P. Reilly and Nicoll Black & Feig, PLLC.

Julie Smith argued the cause for respondent Liitaa Development, LLC. On the brief were Shayna M. Rogers, and Cosgrave Vergeer Kester LLP.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Judgment reversed and remanded as to employer liability law claims against Vigor defendants; otherwise affirmed.

**TOOKEY, P. J.**

Plaintiff appeals a general judgment granting summary judgment to defendants, Vigor Works LLC and Vigor Industrial LLC (together, Vigor), and Liitaa Development, LLC (Liitaa). Liitaa is a commercial lessor of certain property leased by Vigor. Vigor uses that property for, among other commercial activity, metal fabrication. Plaintiff, an employee of Fire Systems West (FSW), was injured while repairing a damaged fire main on the premises that Vigor leases. FSW had been retained by Vigor to perform that service. Specifically, as recounted by the trial court, plaintiff was injured when he was standing in a trench and attempting to secure a new pipe to a connector, and his coworker "accidentally hit the controller for [a track hoe] bucket, which caused the bucket of the track hoe to drop and strike plaintiff's left shoulder and back."

On appeal, plaintiff contends that the "trial court committed reversible error when it granted defendants' motions for summary judgment when the summary judgment record contained sufficient evidence to create questions of material fact on plaintiff's claims." We reverse, in part, and remand.

Regarding plaintiff's claims against Vigor, we conclude that the trial court did not err in granting summary judgment to Vigor on plaintiff's common law negligence claim, but that the trial court did err in granting summary judgment to Vigor on plaintiff's two claims under the Employer Liability Law (ELL), ORS 654.305.[1]

Regarding plaintiff's claims against Liitaa, we conclude that the trial court did not err in granting summary judgment to Liitaa on plaintiff's four claims against it—*i.e.*, a common law negligence claim, two claims under the ELL, and a "premises liability" claim.

---

[1] ORS 654.305 provides:

"Generally, all owners, contractors or subcontractors and other persons having charge of, or responsibility for, any work involving a risk or danger to the employees or the public shall use every device, care and precaution that is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

*Standard of Review.* "We review the trial court's ruling on a motion for summary judgment to determine whether there is a genuine dispute of material fact over issues raised in the motion and whether the moving party is entitled to judgment as a matter of law." *Austin v. Walmart, Inc.*, 340 Or App 279, 281, 570 P3d 642 (2025). "We draw the facts from the summary judgment record, state the facts in the light most favorable to the nonmoving party—here, plaintiff[ ]—and draw all reasonable inferences from the summary judgment record in their favor." *Id.*

*Common Law Negligence Against Vigor.* The trial court determined that plaintiff's common law negligence claim against Vigor failed because plaintiff did not adduce evidence sufficient to create a jury question on the elements of "causation" or "foreseeability." *See Chapman v. Mayfield*, 358 Or 196, 205, 361 P3d 566 (2015) ("[W]hen a claim for common-law negligence is premised on general principles of foreseeability, the plaintiff must plead and prove that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff.").

Assuming there was sufficient evidence in the record that the "hazard" identified by plaintiff on the leased property—*i.e.*, excavation spoils near the trench where plaintiff was working—was a cause-in-fact of plaintiff's injury, and recognizing, as did the trial court, that the issue of foreseeability is "ordinarily committed to juries," we agree with the trial court that "plaintiff does not have evidence that the spoils at the side of the trench constituted a dangerous condition or that Vigor defendants knew or should have known it was a dangerous condition." *See Stone v. Witt*, 331 Or App 722, 727, 548 P3d 497, *rev allowed*, 372 Or 718 (2024) (recognizing foreseeability "plays a role in determining whether the defendant's conduct unreasonably created a foreseeable risk of harm to a protected interest of the plaintiff such that the defendant may be held liable for that conduct" and in determining "whether, because the risk of harm was reasonably foreseeable, the defendant may be held liable to the plaintiff for the particular harm that befell the plaintiff" (internal quotation marks omitted)). That is, as the trial

court concluded, "no reasonable jury would find that it was foreseeable to Vigor defendants that the spoils would cause plaintiff to be struck by FSW's track hoe bucket while he was standing in the trench or that the kind of injury plaintiff suffered was reasonably foreseeable to a person in Vigor defendant's position."[2]

In reaching that conclusion, we note that the evidence in the record reflects that the "spoils" were an obvious condition on the land, "placed in standard practice in the location next to the trench," and also that there is no evidence in the record that FSW explained to Vigor "how it intended to conduct the repair work or where or how it would be using the track hoe." Nor is there any explanation or argument by plaintiff on appeal concerning how the placement of the spoils next to the trench—even if it caused the placement of the track hoe—created a foreseeable risk of plaintiff being struck by the track hoe bucket. Further, we observe that, on appeal, plaintiff does not explain why the trial court's conclusion regarding foreseeability was incorrect. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be" nor "to make or develop a party's argument when that party has not endeavored to do so itself.").

For those reasons, we conclude that the trial court did not err in granting summary judgment to Vigor on plaintiff's common law negligence claims.

*ELL Claims Against Vigor.* We turn to plaintiff's ELL claims against Vigor. The ELL "imposes a heightened statutory standard of care on a person or entity who either is in charge of, or responsible for, any work involving risk or danger." *Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 160, 61 P3d 918 (2003). "[I]n addition to a worker's direct employer, liability under the ELL can be imposed on an indirect

---

[2] An accident report containing observations and recommendations created by an investigator employed by FSW determined that:

"The ultimate cause of [plaintiff] being struck by the bucket was that the operator after being given the all stop signal by the signal man, accidentally bumped one of the controls causing the bucket to fall onto [plaintiff] in the ditch."

employer." *Yeatts v. Polygon Northwest Co.*, 360 Or 170, 179, 379 P3d 445 (2016). An indirect employer is one who "(1) is engaged with the plaintiff's direct employer in a common enterprise; (2) retains the right to control the manner or method in which the risk-producing activity was performed; or (3) actually controls the manner or method in which the risk[-]producing activity is performed." *Woodbury*, 335 Or at 160 (internal quotation marks omitted).

Here, regarding both of his ELL claims, plaintiff asserted in the trial court that Vigor was his "indirect employer" under the ELL because it "retain[ed] the right to control the manner or method in which the risk-producing activity was performed." To establish "that [the defendant] retained the right to control the pertinent risk-producing activity, a plaintiff[] must identify some source of legal authority for that perceived right or present evidence from which a retained right to control can be inferred." *Sanford v. Hampton Resources, Inc.*, 298 Or App 555, 573, 447 P3d 1192, *rev den,* 366 Or 64 (2019) (internal quotation marks omitted).

The trial court granted summary judgment to Vigor, concluding that the "risk-producing activity" was "working in a trench trying to fit a length of pipe that was supported by rigging attached to a track hoe bucket situated above him," and that plaintiff had not "provided sufficient evidence" of Vigor's "retained right to control the manner or method in which the risk-producing activity was performed."[3]

On appeal, plaintiff argues that "the evidence submitted into the summary judgment record demonstrated the full extent of the Vigor defendants' control over the Vigor facility, including the requirement that contractors at the facility comply with Vigor's safety and security requirements," and that the trial court "failed to credit evidence in the record demonstrating the Vigor defendants' employees present at the facility during the repair and their

_____

[3] On appeal, plaintiff does not dispute the trial court's characterization of the "risk-producing activity." In our view, that characterization by the trial court is legally sound. *See Sanford*, 298 Or App at 572 ("The Supreme Court has defined the relevant scope of the work involving risk or danger to include both the worker's discrete task and the circumstances under which the worker must perform that task.").

supervisory role, as well as testimony in the record supporting an inference that the Vigor defendants had the ability to correct FSW's work while at the Vigor facility."

Having reviewed the record, we conclude that the trial court erred in granting summary judgment to Vigor on plaintiff's ELL claims on the basis that it did. In particular, we note that the Purchase Order between Vigor and FSW states that FSW will ensure that any employees who "work at any location owned or controlled by Vigor" will "at all times ∗∗∗ comply with the relevant safety and security guidelines for that location"—*i.e.*, safety guidelines that are developed and maintained by Vigor.[4] The Purchase Order also provides that the work FSW was contracted to perform would be "subject to inspection and testing at all reasonable times and places, ∗∗∗ before, during, and after performance" and that FSW would provide "reasonable support and access to Vigor in the inspection and test of the Work without additional charge." Further, the summary judgment record contains deposition testimony from which the jury could find that FSW would have followed at least certain "directives" from Vigor about the work it was hired to do if it was asked to do so by Vigor—*e.g.*, "I want the track hoe positioned here so it doesn't get in the way of the loading bay"—and that a Vigor employee would occasionally "c[o]me by" to "check out the work and see about progress."

We conclude that that was sufficient evidence to preclude summary judgment on the issue of whether defendant was an "indirect employer" of plaintiff, because it retained the "right to control the manner or method in which the risk-producing activity was performed." *See Yeatts*, 360 Or at 172, 179, 192 (where risk-producing activity was the "plaintiff's framing work at a dangerous height above a concrete surface," the defendant's "retention of the rights to require additional safety measures, and to inspect the work site in its entirety, particularly in the absence of a contractual provision that placed sole responsibility for safety measures on [the plaintiff's direct employer], constituted sufficient evidence that [the defendant] retained the right to control the risk-producing activity so as to preclude summary judgment

---

[4] We observe that although the Purchase Order postdated the work performed by FSW, the trial court treated it as controlling the terms of the parties' relationship. On appeal, no party develops an argument that that was error.

in favor of [the defendant] with respect to that specification of plaintiff's ELL claim").[5] That is the case even though it was FSW, not Vigor, that was the party with the relevant expertise. *See id.* at 176 (defendant could be liable as indirect employer even though "[t]he evidence also shows that [the defendant general contractor] relied on [the subcontractor's] expertise"). Put another way, similar to the defendant in *Yeatts*, here, Vigor retained the right to set location-specific safety guidelines, above and beyond those required by law; those guidelines could have changed the manner in which FSW's employees engaged in the pipe-fitting work that they undertook on Vigor's property. Moreover, drawing all reasonable inferences from the summary judgment record in plaintiff's favor—as plaintiff is the party opposing summary judgment—the record would permit a finding that FSW employees would have followed the directives of Vigor regarding the work performed.

In seeking a different result, Vigor points to *Boothby v. D.R. Johnson Lumber Co.*, 341 Or 35, 137 P3d 699 (2006). In *Boothby*, the Supreme Court concluded that there was insufficient evidence that the defendant "retained

---

[5] We note that the contract at issue in *Yeatts* made the plaintiff's direct employer "primarily responsible for safety measures," but also contained a term requiring the plaintiff's direct employer to undertake "any safety measures requested by [the defendant]." 360 Or at 184, 185.

We acknowledge that the term in the relevant contract in *Yeatts*—requiring the direct employer to undertake "any safety measures requested by [the defendant]"—is somewhat different than the term in the Purchase Order here, which required FSW to comply with Vigor's "relevant safety and security guidelines for th[e] location." Nevertheless, we conclude that that provision of the Purchase Order, coupled with the right of inspection, was sufficient to preclude summary judgment; the provision in the Purchase Order indicates that defendant could impose additional safety guidelines on FSW related to the work being undertaken.

Additionally, we note that the trial court appeared to place little weight on the term in the Purchase Order requiring FSW to comply with "the relevant safety guidelines," because there was "no evidence of any location-specific safety and security guidelines" and Vigor's corporate designee testified that "only work within *** defendant's facilities was subject to any location-specific safety and security guidelines." We think that analysis misses the mark, at least with regard to plaintiff's theory on appeal, because, under that theory of "indirect employment" the question is not whether defendant *actually* "control[led] the manner or method in which the risk[-]producing activity is performed," but whether it "retain[ed] the right to control the manner or method in which the risk-producing activity was performed." *Woodbury*, 335 Or at 160 (setting forth alternative ways in which a plaintiff can establish a defendant was an indirect employer under the ELL).

the right to control [the injured party's direct employer's] operation of [a] log loader" for the defendant to be liable under the ELL as the injured party's indirect employer. *Id.* But there, unlike here, the relevant contract between the injured party's direct employer and the defendant provided that "except for the timing of the operations, *the conduct and control of the work will lie solely with [the injured party's direct employer]." Id.* at 41-42 (emphasis added). As result, in this case, *Boothby* does not advance Vigor's argument that it did not retain the right to control the risk-producing activity undertaken by FSW and its employees.

Consequently, the trial court erred in granting summary judgment to Vigor on plaintiff's ELL claims.

*Common Law Negligence and ELL Claims Against Liitaa.* Regarding plaintiff's common law negligence claim against Liitaa, the trial court assumed, without deciding, that plaintiff could bring a claim against Liitaa based on the "ordinary standard of care applied in a negligence claim," but concluded that such claim failed because (1) "there is no evidence in the record that Liitaa knew or reasonably should have known the fire main was leaking and that the spoils from an excavation existed on the property, much less that anything Liitaa had done or not done in regard to the leak or repair created a foreseeable risk of harm to plaintiff" and that (2) plaintiff "has no evidence that Liittaa contributed to how FSW planned and performed its work, and ultimately, plaintiff's injury."

Regarding plaintiff's ELL claims against Liitaa, the trial court concluded that those claims failed because the commercial lease between Vigor and Liitaa "did not give Liitaa the right to control how FSW repaired the fire main" and that there was "no evidence that Liitaa endorsed Vigor defendants' activities, because, as Liitaa notes, it had no knowledge of the fire main leak and no control over the retention of FSW to perform the work."

On appeal—as Liitaa points out in its answering brief—in his opening brief, plaintiff develops no specific argument as to why the trial court's grant of summary judgment with regard to the common law negligence and ELL claims

against *Liitaa*—as distinct from those against *Vigor*—was erroneous. That lack of argument is significant in this case: Liitaa and Vigor are differently situated *vis-à-vis* plaintiff's claims. Indeed, as plaintiff notes on appeal, his claims against "Liitaa were somewhat more difficult than those against" Vigor. And in granting summary judgment, the trial court provided reasoned analysis with regard to the common law negligence and ELL claims against Liitaa that was different from its reasoned analysis with regard to plaintiff's common law negligence and ELL claims against Vigor.

It is not this court's function "to speculate as to what a party's argument might be" nor "to make or develop a party's argument when that party has not endeavored to do so itself." *See Beall Transport Equipment Co.*, 186 Or App at 700 n 2.

Further, although plaintiff offers a short argument in his reply brief as to why the trial court's grant of summary judgment on the common law negligence and ELL claims against Liitaa was erroneous, that argument comes too late. *State v. Murga*, 291 Or App 462, 468, 422 P3d 417 (2018) ("We have long held that arguments raised for the first time in a reply brief normally will not be considered.").

Notwithstanding those hurdles with the briefing, however, we have considered the record, the trial court's ruling, and the arguments in the reply brief, and we can discern no error in the trial court's grant of summary judgment to Liitaa on plaintiff's common law negligence and ELL claims against it. That is, we conclude that the trial court's reasoning as to those claims, as described above, was not legally erroneous.

*Premises Liability Claims Against Liitaa:* The trial court granted summary judgment to Liitaa on plaintiff's "premises liability" claim against it after concluding that Liitaa "as a commercial lessor of the land, is not liable for plaintiff's injuries because those injuries did not arise from known or reasonably knowable conditions antedating the lease" and a jury could not reasonably conclude that "the fire suppression system antedating the lease was a hazardous condition on the land that caused or gave rise to plaintiff's

injuries." In so concluding, it applied the test for the liability of a commercial lessor from *Walsh v. Spalding & Son, Inc.*, 216 Or App 55, 64-65, 171 P3d 1032 (2007), *rev den,* 344 Or 391 (2008):

> "First, a commercial lessor is liable in negligence for reasonably foreseeable injuries to invitees of its lessee where those injuries arise from known or reasonably knowable conditions antedating the lease, unless, in the totality of the circumstances, including the nature of the potentially hazardous condition and the lessor's opportunity to remedy that condition, the lessor reasonably expected that the tenant would take steps to remedy the defect or otherwise to safeguard persons entering the premises at his invitation. Second, in most circumstances, the determination of the reasonableness of the lessor's conduct—specifically, whether it was reasonable to expect that the lessee would remedy the dangerous condition—is committed to the trier of fact."

(Internal quotation marks, brackets, and citations omitted.)

In arguing that the trial court erred, on appeal, plaintiff does not argue that the trial court applied the wrong legal standard, but instead argues that the trial court erred when it "overlooked Liitaa's status as the sister [company] of Oregon [Iron Works], to which Liitaa had previously leased the facility and with which Vigor merged in order to continue operating the facility." Plaintiff also argues, among other points, that Liitaa was "familiar with the fabrication operations taking place at the Vigor facility" and that the lease "specifically contemplated repairs to the fire suppression system"; that "Liitaa did not require the Vigor defendants to obtain Liitaa's consent for this repair work, rather the onus was on the Vigor defendants to cover the cost of such repairs itself"; and that Liitaa "knows that the activities taking place at the facility include heavy industrial fabrication, and all 'ancillary uses', which are inherently dangerous activities intimately known by Liitaa."

Ultimately, plaintiff contends that "a reasonable fact-finder could conclude that the fire suppression system was in such a state that it was a hazardous condition that required careful planning and maintenance, as opposed to the haphazard emergency repair undertaken by the tenant

after the landlord (Liitaa) attempted to delegate the issue away through the provisions in the lease" and "Liitaa's conduct amounted to an attempt to bury its head in the sand while calling itself the 'innocent landowner' while claiming it had no knowledge of the activities taking place."

We conclude that the trial court did not err in granting summary judgment to Liitaa on plaintiff's premises liability claim. To the extent plaintiff argues that the *damaged* fire main on Liitaa's property was a cause of plaintiff's injury, because it needed repair, there is no evidence in the record from which the jury could find that the damage to the fire main was a condition antedating the lease: The lease was entered into in 2014, and Vigor discovered the problem with the fire main in 2020; there is no evidence regarding the condition of the fire main in 2014 when the lease was executed.[6] *See Chapman v. Mayfield*, 263 Or App 528, 534, 329 P3d 12 (2014), *aff'd,* 358 Or 196 (2015) ("The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncrasies. The line is drawn by the laws of logic." (Internal quotation marks omitted.)).

---

[6] In that regard, we note, under the lease, the fire suppression system was just one of many aspects of the premises that Vigor had responsibility for maintaining.

Section 6.2.1 of the lease provides, in part:

"6.2.1 Tenant shall, at Tenant's sole expense, keep the Premises (excluding those portions which are maintained by Landlord pursuant to Section 6.2.2 below) utility installation, and alterations, if applicable, in good order, condition and repair ***, including, but not limited to, all equipment or facilities, such as plumbing, heating, ventilation, air-conditioning ***, mechanical, electrical, lighting facilities, boilers, pressure vessels, *fire protection system*, fixtures, interior walls, ceilings, floors, windows, doors, plate glass, skylights, and the figures appurtenant to the Premises including dock boards, truck doors, dock bumpers, landscaping, driveways, parking lots, fences, retaining walls, signs, sidewalks and parkways located in, on, or adjacent to the Premises and shall maintain the Building exterior walls, roofs, foundations and structural components in the condition existing on the Effective Date of this Lease. Tenant shall exercise and perform good maintenance practices including the procurement and maintenance of service contracts, at Tenant's sole expense, with contractors specializing and experienced in the maintenance of HVAC equipment, fire protection system equipment, landscaping and irrigation systems, roof covering and drains, and any other equipment, if reasonably required by Landlord."

(Emphasis added.)

To the extent that plaintiff argues that knowledge about how the facility would be used—"heavy industrial fabrication"—was a condition antedating the lease, that condition has no obvious relationship to his injury, which was a result of his coworker's error when repairing the damaged fire main. *See Chapman*, 358 Or at 205 (the plaintiff must show the "defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff").

Consequently, we conclude that the trial court did not err in granting summary judgment to Liitaa on plaintiff's premises liability claims.

*Conclusion.* For the foregoing reasons, we conclude that the trial court did not err in granting summary judgment to Liitaa, or in granting summary judgment to Vigor on plaintiff's common law negligence claim. We conclude, however, that the trial court erred in granting summary judgment to Vigor on plaintiff's ELL claims. Consequently, we reverse and remand the judgment as to the ELL claims against Vigor.

Judgment reversed and remanded as to employer liability law claims against Vigor defendants; otherwise affirmed.